The STATE of Ohio, Appellee,

v.

SIMMONS, Appellant.

[Cite as *State v. Simmons,* 189 Ohio App.3d 532, 2010-Ohio-3412.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 93331.

Decided July 22, 2010.

William D. Mason, Cuyahoga County Prosecuting Attorney, and John Hanley, Assistant County Prosecuting Attorney, for appellee.

Patrick E. Talty, for appellant.

---

MARY EILEEN KILBANE, Presiding Judge.

{¶ 1} Appellant, Sylvester Simmons, appeals his conviction and sentence on four counts of aggravated burglary, four counts of aggravated robbery, four counts of kidnapping, and five counts of robbery. He argues that the trial court erred in denying his motion for acquittal when there was insufficient evidence to convict him, that the trial court did not follow R.C. 2911.11 and 2911.12 in sentencing him, and that his counsel was ineffective for failing to argue that his sentence was disproportionate. After carefully reviewing the law and facts, we affirm in part, reverse in part, and remand.

## Statement of the Case and Facts

{¶ 2} On January 30, 2009, a Cuyahoga County grand jury charged Simmons in a 54–count indictment.

{¶ 3} Count 1 alleged aggravated burglary, a first-degree felony, in violation of R.C. 2911.11(A)(1); Count 2 alleged aggravated robbery, a first-degree felony, in violation of R.C. 2911.01(A)(3); Count 3 alleged kidnapping, a first-degree felony, in violation of R.C. 2905.01(A)(2); Count 4 alleged robbery, a second-degree felony, in violation of R.C. 2911.02(A)(2); Count 5 alleged tampering with evidence, a third-degree felony, in violation of R.C. 2921.12(A)(1); Count 6 alleged assault, a first-degree misdemeanor, in violation of R.C. 2903.13(C)(3); Counts 7 through 18 alleged aggravated burglary, first-degree felonies, in violation of R.C. 2911.01(A)(3); Counts 19 through 30 alleged aggravated robbery, third-degree felonies, in violation of R.C. 2911.01(A)(3); Counts 31 through 42 alleged robbery, second-degree felonies, in violation of R.C. 2911.02(A)(2); Counts 43 through 54 alleged kidnapping, first-degree felonies, in violation of R.C. 2905.01.

{¶ 4} On March 16, 2009, Simmons executed a jury waiver.

{¶ 5} On April 13, 2009, Simmons proceeded to a trial before the court.

{¶ 6} On April 15, 2009, the trial court granted Simmons's Crim.R. 29 motion for acquittal regarding Counts 5 and 6.

{¶ 7} On April 16, 2009, the trial court found Simmons guilty of 17 counts as charged in the indictment: four counts of aggravated burglary (Counts 1, 7, 8, and 9), four counts of aggravated robbery (Counts 2, 19, 20, and 21), four counts of kidnapping (Counts 3, 43, 44, and 45), and five counts of robbery (Counts 4, 31, 32, 33, and 38).

{¶ 8} On April 20, 2009, the trial court sentenced Simmons to a 32–year term of incarceration. This appeal followed. The following facts were developed at trial.

## Trial

{¶ 9} The victim, Aubrey Nelson, is a 67–year–old retiree from TRW who lives on Wickford Road in Cleveland, Ohio. He testified that he receives approximately $1,510 a month in retirement and social security benefits. Nelson testified that he knew Simmons and the two codefendants, Freddie Crumbley and Bennie Marshall, because they all grew up on Wickford Road. Nelson testified that he sometimes gave them money so that they could "get their life started." However, between 2007 and 2008, Simmons and his codefendants began regularly demanding money from Nelson and visited him only when he received his checks in the mail.

{¶ 10} Nelson testified that on one occasion, after the fall of 2008, Simmons threw him on the floor, reached into his pocket, and took out money. Though he admitted that he willingly gave them some money, Nelson further testified that Simmons and the other codefendants ultimately took between $2,300 and $2,400 from him. Nelson testified that Simmons even took his garage door in October or November 2007 and took his refrigerator in December 2007 or January 2008. Though Nelson admitted that he initially gave Simmons and his codefendants permission to use his refrigerator for a party, they never returned it.

{¶ 11} During this time, Nelson's neighbors began to see that both Nelson and his home were falling into disrepair and that he was losing a significant amount of weight. Nelson's neighbor, Lisa Arnold, testified that she began feeding Nelson and lending him money out of concern for him and that such things had never before occurred in over 20 years of being his neighbor. Arnold testified that by December 2008, she fed Nelson on a daily basis.

{¶ 12} Another neighbor, Ronald Jones, testified that he approached Simmons and Crumbley one day in the summer of 2008, as they exited Nelson's home, and made them return $300 they had just taken from Nelson.

{¶ 13} Donovan Boddy, also a neighbor, testified that in the winter of 2008, he saw Simmons grab Nelson and hit him twice while demanding money.

{¶ 14} After meeting with Nelson's concerned neighbors, the Cleveland Police Department's Fifth District Vice Unit agreed to set up a surveillance detail inside Nelson's house for when he would receive his next retirement check.

{¶ 15} On January 2, 2009, Detectives Robert Martin and Sean Smith had just locked the back door of Nelson's house, and did not even have their surveillance equipment set up, when Simmons and Crumbley appeared. After Nelson refused to let them in, Simmons and Crumbley began forcefully banging and kicking on

the back door of the house. Simmons stated: "Open the door or we are going to f*** you up. Open the door, you know what's going to happen if you don't open the door." After failing to gain entrance to Nelson's home through the back door, Simmons and Crumbley broke down Nelson's side door by kicking the door's hinges off the wall. They then kicked through an interior door that was locked by a chain link and held up by a ladder.

{¶ 16} Once inside, Simmons and Crumbley grabbed Nelson by the shirt and pushed him toward the back door of the house, at which time Detectives Martin and Smith made their presence known. A struggle ensued, and Simmons fled as the detectives arrested Crumbley. A short time later, detectives found Simmons hiding in a closet in an apartment on Alcoy Avenue, a few blocks away. After another struggle, Simmons was arrested. Once arrested, Simmons stated: "If I'm going down for this sh**, they are all going down * * * even my sister has been robbing him."

### Law and Analysis

{¶ 17} Simmons's first assignment of error states:

The trial court erred in denying appellant's motion for acquittal where the evidence is not sufficient to support a conviction.

{¶ 18} Simmons argues that the trial court erred in denying his Crim.R. 29 motion because the state failed to prove that he committed any criminal activity between January 1, 2008, and January 31, 2008, or from March 18, 2008, to March 31, 2008.

{¶ 19} The standard of review for a challenge to the sufficiency of the evidence was set forth in *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184. "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." Id. at syllabus.

{¶ 20} In *State v. Bradley*, 8th Dist. No. 87024, 2006-Ohio-4589, 2006 WL 2567673, we stated:

*Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks* (1991), 61 Ohio St.3d 259[, 574 N.E.2d 492], paragraph two of the syllabus, in which the Ohio Supreme Court held:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

*Bradley* at ¶ 12, quoting *Jenks* at paragraph two of the syllabus, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶ 21} The testimony elicited at trial consistently stated that these criminal events occurred in 2007 and 2008. Nelson testified that these events stretched from 2007 into 2008. Boddy testified that some of the events he witnessed occurred in the winter of 2008; yet the exact incident he was referring to occurred in October or November 2008, not March 2008. When pressed, Boddy could state only that Simmons lived in Nelson's house from January to March 2008. On several occasions, Boddy saw Simmons take Nelson's checks. He testified that it happened "every month" and "twice a month," and "whenever Nelson got money." Boddy also testified that he saw Simmons take Nelson's garage door and stated: "It was last winter. Probably around like October, November." It is unclear from the record whether Boddy was referring to 2007, as Nelson testified, or 2008. Boddy testified that he saw Simmons hit Nelson on two occasions. At least one of these occasions was in the winter of 2008. Boddy did not testify to any specific criminal activity in March 2008, and the state offered no other evidence to substantiate the criminal activity alleged between March 1 through March 31, 2008, as charged in the indictment.

{¶ 22} In fact, Nelson himself testified that Simmons stayed with him at his home from December 2007 until February 2008. There was no direct testimony from the victim or any other witness that any criminal activity occurred in March 2008.

{¶ 23} It is well settled in this district that "[t]he precise date and time of an offense are generally not elements of an offense. According to Crim.R. 7(B), '[t]he indictment * * * shall contain a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations not essential to be proved. It may be in the words of the applicable section of the statute as long as the words of that statute charge an offense, or in any words sufficient to give the accused notice of all the elements of the offense with which he is charged.'" *State v. Shafer*, 8th Dist. No. 79758, 2002-Ohio-6632, 2002 WL 31722127, at ¶ 13.

{¶ 24} While this legal principle is certainly true, this case does not involve a situation where a witness's testimony was vague on a date or a time. Here, there simply was no evidence in the record showing any direct, specific testimony regarding crimes corresponding with certain dates alleged in the indictment, specifically March 1 through March 31, 2008.

{¶ 25} The trial court erred in failing to grant Simmons's Crim.R. 29 motion with respect to crimes alleged to have occurred between March 1 through March

31, 2008; specifically, Count 9, aggravated burglary; Count 21, aggravated robbery; Count 30, robbery; and Count 45, kidnapping. Simmons's first assignment of error is sustained. The state failed to provide sufficient evidence to convict Simmons of these charges in the indictment.

{¶ 26} In light of our disposition of Simmons's first assignment of error, his second assignment of error is moot.

{¶ 27} Simmons's third assignment of error states:

Appellant was not afforded effective assistance of counsel in that trial counsel failed to raise the issue of disproportionate sentence.

{¶ 28} To prevail on a claim of ineffective assistance of defense counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance resulted in real prejudice. *Strickland v. Washington* (1984), 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.E.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland* at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. A strong presumption exists that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. Id. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 29} In the instant case, Simmons cannot show that his counsel's performance fell below an objective standard of reasonableness simply because his counsel did not object to the proportionality of the sentence. Under *Strickland*, Simmons cannot show that the outcome of his trial would have been different had his counsel objected at a posttrial sentencing hearing. He therefore cannot show that his counsel's failure to object prejudiced him in any way. Last, even if his counsel had objected, this in and of itself would likely not have changed Simmons's sentence, either. Simmons's third assignment of error is overruled.

{¶ 30} The judgment is affirmed in part and reversed in part, and the cause is remanded. We order the trial court to vacate Simmons's convictions for crimes occurring between March 1 through March 31, 2008.

Judgment affirmed in part
and reversed in part,
and cause remanded.

MᶜMONAGLE and BOYLE, JJ., concur.